UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RAJON JAMISON, <br><br> Defendant. | Case No. 19-20798 <br> Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS [33]**

While Rajon Jamison was on supervised release for gun and drug offenses, search warrants were executed at a residence where he was believed to be staying and on two smart phones located in the residence. Numerous firearms were also discovered in the residence. As a result, Jamison has been indicted on new charges of possession of firearms by a prohibited person.

Jamison moves to suppress the evidence obtained from the searches. He claims the affidavits in support of the search warrants failed to establish probable cause. Jamison's arguments lack merit and, in any event, the officers acted in good faith in relying on the warrants issued by two judges. Thus, Jamison's motion to suppress is DENIED.

**I.**

Jamison pleaded guilty in federal court on April 9, 2012, to two counts of being a felon in possession of a firearm and one count of possession with intent to distribute a

controlled substance. *United States v. Jamison*, No. 10-20079 (E.D. Mich. Apr. 9, 2012) (plea agreement). The charges stemmed from his possession of two semi-automatic firearms and several plastic bags containing crack cocaine and heroin. (*Id.*) He was sentenced by District Judge Mark A. Goldsmith to 84 months in prison and three years of supervised release. *United States v. Jamison*, No. 10-20079 (E.D. Mich. Aug. 27, 2012) (judgment).

Jamison began his term of supervised release on September 25, 2018. (ECF No. 45, PageID.245.) He advised his probation officer that he would be residing with his sister on Brandon Street in Detroit. (*Id.*) Less than a year later, a violation petition was issued charging Jamison with attempting to sell marijuana to his probation officer on June 26, 2019, and further indicating that Jamison had been selling marijuana for the prior two months. *United States v. Jamison*, No. 10-20079 (E.D. Mich. Aug. 30, 2019) (violation petition). In connection with this violation petition, Judge Goldsmith issued a warrant for Jamison's arrest. *Id*. (arrest warrant).

A few weeks later on September 24, 2019, Jamison's probation officer, Warren Henson, was contacted by a woman who had been dating Jamison. She advised that since June 2019, Jamison had been residing at 2801 Tiptree Path in Flint, Michigan. (ECF No. 40-4, PageID.235.) She said she had visited Jamison at that location. (ECF No. 45, PageID.250.) She told Henson that she personally observed Jamison store an AK-47 style rifle in a hideaway bed in the living room of the residence and that Jamison was still in possession of the firearm. (*Id*. at PageID.250, 255; ECF No. 40-4, PageID.235.) The woman also told Henson that Jamison assaulted her a few days earlier. (ECF No. 45,

PageID.248.) Henson requested the police report from the Flint Township police which he received the next day. (*Id*.)

Henson then contacted members of the Michigan State Police Third District Fugitive Team who set up surveillance at the Tiptree Path residence in the early morning hours of October 29, 2019, in an attempt to locate Jamison and arrest him on the warrant. (*Id*. at PageID.250–251; ECF No. 40-4, PageID.233.)[1] While conducting their surveillance, team members observed a white GMC Yukon bearing a license plate registered to Jamison parked in the driveway. (ECF No. 40-4, PageID.233).

That same day, a member of the MSP Fugitive Team contacted ATF Task Force Officer James Swain and Special Agent Dustin Hurt to advise of their investigation of Jamison. (ECF No. 40-3, PageID.217.) The ATF agents also spoke with Jamison's probation officer (Henson) who reiterated that he had recently received information indicating that Jamison was residing at the Tiptree Path address and was in possession of an AK-47 style rifle that was stored within a hideaway bed in the living room of the residence. (*Id*. at PageID.218.) The agents were further advised that the Tiptree Path address was not the address Jamison identified as his probation residence. (*Id*.)

Based upon this information, TFO Swain prepared an affidavit in support of a warrant to search the Tiptree Path residence for Jamison as well as firearms and

---

[1] Henson testified that the day before he contacted members of the MSP Fugitive Team, he had been contacted by a U.S. Marshal who was working on the outstanding federal arrest warrant, but having difficulty locating Jamison at the Brandon Street address. (ECF No. 45, PageID.255, 258–259; ECF No. 42, PageID.103.) Henson advised him as well of the new Tiptree Path residence.

ammunition. (ECF No. 40-5, PageID.236.) The affidavit explained that, on September 16, 2019, a woman in a dating relationship with Jamison advised that Jamison had followed her to work at a McDonald's in Flint and punched her in the head. (ECF No. 40-2, PageID.212.) Two McDonald's co-workers attempted to get Jamison away from the woman when Jamison lifted up his shirt and brandished a firearm, advising the co-workers to back away if they "knew what was good for them." (*Id.*) The Flint Police Department responded to the scene but Jamison fled before their arrival. (*Id.*)

The affidavit further explained that on October 24, 2019, probation officer Henson contacted members of the Fugitive Team and relayed the information he had received. More specifically, Henson told the Fugitive Team that a woman who had been dating Jamison had indicated that he had been residing at 2801 Tiptree Path in Flint since June, that she personally observed Jamison store an AK-47 style rifle within a hideaway bed in the living room, and that Jamison was still in possession of the firearm. (*Id.*) The affidavit also disclosed that on October 29, 2019, Fugitive Team members observed a white GMC Yukon parked in the driveway of the residence that was registered to Rajon Jamison at 2837 Brandon Street, Flint, MI 48504, which was Jamison's federal probation address. (*Id.* at PageID.213.)

Also, the affidavit referenced Jamison's supervised release as a result of his prior federal convictions and that an arrest warrant had been issued for alleged violations of that supervised release. (*Id.* at PageID.213.)

The residence search warrant was authorized by Judge Mark Latchana of the 67th District Court in Flint and executed the afternoon of October 29, 2019. (ECF No. 40-2;

4

ECF No. 40-3, PageID.218.) Officers located Jamison in the living room of the Tiptree Path residence. (ECF No. 40-3, PageID.218.) They also found three firearms under the hideaway bed in the living room (a Ruger P90 .45 caliber pistol with magazine, a Hi-Point .40 caliber rifle with magazine, and an Intratec uzi-style handgun with a high-capacity magazine loaded with 17 live rounds), as well as ammunition, holsters, a vest for body armor, and two black cell phones. (*Id*. at PageID.219); *United States v. Jamison*, No. 10-20079 (E.D. Mich. Jan. 2, 2020) (order amending violation petition). Officers also retrieved pieces of mail addressed to Jamison at the Tiptree Path residence and Jamison's social security card. (ECF No. 40-5, PageID.237.)

The next month, ATF Special Agent Hurt prepared an affidavit in support of a federal search warrant for the black iPhone and black LG Smartphone that had been seized during the search of the Tiptree Path residence. (ECF No. 40-3.) Agent Hurt's affidavit contained much of the same information as the Swain affidavit. Agent Hurt set forth his belief that "a search of the Target Phones may reveal information tending to establish Jamison's residence at, or use of, the address of 2801 Tiptree Path" and that "[s]uch information would be relevant to establishing Jamison's possession of the firearms found at that address." (*Id*. at PageID.220.) The phone search warrant was issued by U.S. Magistrate Judge Michael Hluchaniuk on November 25, 2019. (*Id*. at PageID.230.)

A few days later, on December 4, 2019, Jamison was indicted for unlawful possession of the three semi-automatic firearms located at the Tiptree Path residence on October 29, 2020. (ECF No. 1.) Jamison has now moved to suppress the evidence obtained from the residence and the two black cell phones. (ECF No. 33.) Jamison contends that the

5

search warrant for the residence lacked probable cause and the search warrant for the phones was tainted by the improper residence search. (*Id*.) The Government opposes the motion. (ECF No. 40.) The Court conducted an evidentiary hearing on December 7, 2020, and heard testimony from Juanisha Jamison, Jamison's sister, ATF special agent Dustin Hurt, and Probation Officer Warren Henson. Having carefully considered the parties' briefing and arguments, as well as the witness testimony, the Court finds that the warrants were supported by probable cause and, even if they were not, the officers relied on them in good faith. Thus, there is no basis to suppress the evidence.

## II.

Jamison first argues that the information from the person he was dating is unreliable hearsay. As produced in discovery, Paragraph 6 of the affidavit in support of the Tiptree Path residence search warrant reads as follows:

> On October 24, 2019, members of the Fugitive Team were contacted by Federal Probation Officer Warren Henson. Henson advised, [REDACTED] contacted him reference the whereabouts of JAMISON, with whom has an active federal probation violation warrant in LEIN/NCIC. [REDACTED] advised JAMISON is currently residing at 2801 Tiptree Path Flint, MI 48506 and has been since June 2019. [RECDACTED] further explained, [REDACTED] personally observed JAMISON store an AK-47 style rifle within a hideaway bed located in the living room of the residence. [REDACTED] stated, JAMISON is currently still in possession of the AK-47 style rifle.

(ECF No. 33, PageID.132–133.) Jamison says there is no indication in the affidavit that the hearsay statements in this paragraph regarding the address or the weapon are reliable. (*Id*. at PageID.133.) According to Jamison, he "has resided at his mother's address on Brandon Street since [being] released from prison on September 25, 2018" and that while he was

6

familiar with the Tiptree Path house because his friend lived there, "[h]e did not reside at that residence." (ECF No. 33, PageID.133.)

This argument, while intended to be a challenge to probable cause, has resulted in a short sidetrack. If Jamison's position is that he resided only at the Brandon Street residence, then the Government believes he lacks a legitimate privacy interest in the Tiptree Path residence under the Fourth Amendment. (ECF No. 40, PageID.193.) And so, says the Government, Jamison lacks Fourth Amendment "standing" to challenge the Tiptree Path warrant and the motion to suppress should end here. *See United States v. Payner*, 447 U.S. 727, 731 (1980) (finding that a defendant's Fourth Amendment rights are violated "only when the challenged conduct invaded his legitimate expectation of privacy rather than that of a third party").

At the hearing, Jamison changed course slightly. His sister testified that the Brandon Street residence was hers and that Jamison slept in the living room. There were times, however, when he stayed at the Tiptree Path address. This was the home of his young daughter and her mother. Thus, Jamison argued, while Brandon Street was his permanent residence, he occasionally stayed at the Tiptree Path residence. (ECF No. 45, PageID.263.)

"In the Fourth Amendment context, 'standing' is 'a useful shorthand' for the requirement 'that a person must have a cognizable Fourth Amendment interest in the place searched' in order to challenge a search as unconstitutional." *United States v. Calhoun*, No. 19-2284, 2020 U.S. App. LEXIS 34401, at *6 (6th Cir. Oct. 30, 2020) (quoting *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018)). But "[u]nlike the Article III doctrine that shares its name, Fourth Amendment 'standing' is not jurisdictional and 'need not be

addressed before . . . other aspects of the merits of a Fourth Amendment claim.'" *Id*. at *7. Because Jamison's car was parked in the Tiptree Path residence driveway, he was the sole occupant in the residence at the time of the search, there was mail addressed to him at the Tiptree Path address, his social security card and photographs of him were located in the residence, (ECF No. 40-5), and this was the residence of his daughter and a place where he occasionally stayed, the Court will assume without deciding that Jamison has a Fourth Amendment privacy interest in the Tiptree Path residence. The Court will thus address his probable cause arguments.

### III.

The Fourth Amendment requires that a search or seizure be supported by probable cause, which is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006). An affidavit in support of a search warrant "must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *Abboud,* 438 F.3d at 571 (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). The court considers the "totality of the circumstances" presented in the affidavit. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). And it gives great deference to the magistrate judge's finding of probable cause. *Abboud*, 438 F.3d at 571; *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

### A.

Jamison maintains that the Tiptree Path residence search warrant lacks probable cause because the supporting affidavit consists of unreliable and uncorroborated hearsay

statements from an unknown source. (ECF No. 33, PageID.132–133.) But this does not hold up legally or factually.

First, as the Government points out, the witness who contacted probation officer Henson about Jamison's connection to the Tiptree Path residence and his possession of a firearm was not an unknown source. (ECF No. 40, PageID.196.) For security reasons, this witness' name was redacted in the affidavit produced to Jamison as part of the Government's discovery. (*Id.*) But the witness was expressly identified by name in the affidavit presented to the state court judge. (*Id.*) And "named witnesses, unlike confidential informants, require little corroboration." *United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008); *see also United States v. May,* 399 F.3d 817, 824–25 (6th Cir. 2005) ("The statements of an informant . . . whose identity was known to the police and who would be subject to prosecution for making a false report, are . . . entitled to far greater weight than those of an anonymous source."). Even the case cited by Jamison, *United States v. Ferguson*, recognizes the distinction between naming an informant, which is often an indicator of reliability in itself, and relying on confidential and anonymous informants, whose information requires some bolstering by law enforcement. 252 F. App'x 714, 720–21 (6th Cir. 2007).

In addition to being identified by name, the witness was described as having been in "a dating relationship with Jamison." (ECF No. 40-2, PageID.212.) She had the knowledge to get in contact with Jamison's federal probation officer. (*Id.*) This witness, as the Government points out, was also "a direct eyewitness to Jamison's unlawful possession of a firearm and his storage of that firearm at the Tiptree Path address." (ECF No. 40,

9

PageID.197.) And "[i]n a practical sense, there could hardly be more substantial evidence of the existence of the material sought and its relevance to a crime" than a named witness' personal observation of the evidence in a location. *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986); *see also United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019) ("*Pelham* makes the perhaps unassailable observation that an informant who sees criminal activity can provide a substantial basis for finding probable cause.").

At the suppression hearing, Jamison made an additional argument. While he now acknowledges the witness was known, he questions her credibility. (ECF No. 45, PageID.264–265.) This is based on alleged inconsistencies in her reporting of Jamison's assault. During her phone conversation with probation officer Henson, she told him that when several co-workers attempted to assist her by stopping the assault, Jamison raised his shirt and brandished a firearm. But she apparently did not provide this information to the Flint police, as it is not contained in the police report. (*Id.* at PageID.264.)

This discrepancy does not make the informing witness unreliable. Henson testified that he had no reason to question this woman's credibility. (*Id.* at PageID.259–260.) She told him that she had been knocked unconscious during the assault. (*Id.* at PageID.256.) Henson believes that could explain why she was able to give him more information a few days after the assault than she gave to the police at the time. (*Id.*) And when he viewed the police report, there were areas of consistency between what she told him and what she told the police. (*Id.* at PageID.258.) As for Jamison's belief that the issuing magistrate judge should have been made aware of the discrepancy, "the affidavit is judged on the adequacy

10

of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000).

Jamison has not pointed to any inaccurate information provided by the witness or to the judicial officer examining the search warrant affidavit. To the contrary, this witness provided specific details—such as the exact address where Jamison was living, how long he had been living there, the type of weapon he had, and the precise location in the residence where it was located. As the Government argues, the ability of a witness to provide this level of detail is itself an indicator of reliability. *See United States v. Miller*, 314 F.3d 265, 271 (6th Cir. 2002) (finding that issuing judge had substantial basis for concluding that a search of defendant's mobile home would uncover evidence of wrongdoing where named witness was able to identify details including the specific type of marijuana and the location within the home of the marijuana plants).

Defense counsel also suggested for the first time at the suppression hearing that the witness' information about Jamison's possession of the firearm might be stale. (ECF No. 45, PageID.264.) But the one-month gap between the witness relaying this information to Henson and the acquisition of the search warrant was well within the expiration date approved by the Sixth Circuit. *See, e.g.*, *United States v. Pritchett*, 40 F. App'x 901, 905–06 (6th Cir. 2002) (information from named informant that he saw firearms at defendant's residence four months prior to the execution of search warrant at defendant's residence was not stale because "[f]irearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time."); *United States v. Lancaster*, 145 F. App'x 508, 513 (6th Cir. 2005) (two-year-old information that defendant was seen firing a

11

machine gun was not stale); *United States v. Vanderweele*, 545 F. App'x 465, 469 (6th Cir. 2013) (information from named informant that he witnessed defendant possess a silencer at a motorcycle club seven months prior to the execution of search warrant at defendant's residence was not stale).

In short, the Fugitive Team was contacted by a federal probation officer who relayed detailed information from an eyewitness of Jamison's activities. But even with this information, the officers still sought to corroborate Jamison's presence at the Tiptree Path residence. They set up surveillance on the residence during which they observed a white GMC Yukon parked in the driveway. (ECF No. 40-2, PageID.212.) The Yukon was registered to Jamison at the 2837 Brandon Street address that he had reported to his probation officer. It was then that TFO Swain prepared the affidavit in support of the search warrant.

**B.**

With the witness' reliability established, there can be little doubt that the affidavit "establish[ed] a nexus between the location and criminal activity under investigation." (ECF No. 33, PageID.126.) For a search warrant to issue, the affidavit "must show a likelihood . . . that the items sought are 'seizable by virtue of being connected with criminal activity' . . . and 'that the items will be found in the place to be searched.'" *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 n.6 (1978)). "To meet the nexus requirement . . . 'the circumstances must indicate why evidence of illegal activity will be found in a particular place.'" *United States v. Berry*,

565 F.3d 332, 338 (2009) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)).

The affidavit here advised that Jamison, who had a prior federal conviction for felon in possession of a firearm and possession with intent to distribute controlled substances, was being investigated for being a felon in possession of a firearm contrary to Michigan Compiled Laws § 750.224f. (ECF No. 40-2, PageID.212–213.) The affidavit also included the named eyewitness' information that Jamison was currently residing at 2801 Tiptree Path in Flint, that he had been residing there since June 2019, that the witness had personally observed Jamison store an AK-47 style rifle within a hideaway bed located in the living room of the residence, that he was still in possession of the rifle, and that one month prior he had assaulted the witness and brandished a firearm. (*Id.*) Given the totality of the circumstances set forth in this search warrant affidavit, the Flint district judge reasonably determined that there was a fair probability that the firearm which Jamison was prohibited from possessing would be found at the Tiptree Path residence. *O'Connor*, 723 F. App'x. at 310. There is no basis to suppress the evidence recovered from this search.

This resolves, as well, the challenge to the search of the two black smart phones. Jamison attacks the November 2019 search warrant affidavit as being "fatally tainted by the inclusion of information and evidence seized during the unlawful searches conducted pursuant to the October 29, 2019 warrant." (ECF No. 33, PageID.127.) But the Court has found no such taint.

Jamison alternatively argues that probable cause is lacking because the affidavit "fails to establish a nexus between the phones and the criminal activity under

13

investigation." (*Id.*) But this is the extent of the argument. And it is not for the Court to further develop it for him. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

Nor could the Court get very far if it tried to develop Jamison's argument. The affidavit in support of the phone warrant included the same factual background as the residence affidavit, as well as a more complete recitation of Jamison's criminal background, and that the agents were investigating Jamison for possession of a firearm by a prohibited person in violation of 18 U.S.C. §922(g)(1). (ECF No. 40-3, PageID.217–219.) ATF Special Agent Hurt also set forth his credentials and his understanding, based on his training and experience, that cell phones can contain GPS and other data, such as photographs, videos, and social media applications, that can reveal associations between an individual and a location. (*Id.* at PageID.225–226.) And he further advised the Magistrate Judge that

> 10. I believe the [cell phones] will contain evidence aiding in the prosecution of the criminal acts under investigation. Specifically a search of the Target Phones may reveal information tending to establish Jamison's residence at, or use of, the address of 2801 Tiptree Path . . . . Such information would be relevant to establishing Jamison's possession of the firearms found at that address.

(ECF No. 40-3, PageID.220.) The affidavit provided a sufficient nexus between the cell phones seized from the Tiptree Path residence and the felon in possession offense being investigated. There is no basis to suppress the information obtained from the phones.

IV.

Even if the court reached a contrary conclusion about the validity of the residence and phone warrants, the good-faith exception to the exclusionary rule would apply. *United States v. Leon*, 468 U.S. 897, 918–21 (1984). "For the reasons just given, this is not a case in which a 'simple glance' at the warrant[s] would reveal deficiencies glaring enough to make reliance on [them] unreasonable." *United States v. Castro*, 881 F.3d 961, 966 (6th Cir. 2018) (citing *United States v. Watson*, 498 F.3d 429, 432 (6th Cir. 2007)). "All in all, this was not the kind of 'deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights' that triggers suppression." *Id*. (citing *Davis v. United States*, 564 U.S. 229, 238 (2011) (quotations omitted)).

V.

Lastly, while the Government persuasively opposed Jamison's arguments about the lack of probable cause and good faith reliance, it offered an additional basis for denying the motion to suppress: inevitable discovery. (ECF No. 40, PageID.204.)

The argument goes as follows. At the time of the search of the Tiptree Path residence, a valid arrest warrant existed for Jamison's arrest on his supervised release violation petition. The officers had a reasonable belief that Jamison was at the residence. Thus, the officers were authorized to enter the residence to arrest Jamison. At that time, Jamison was the sole occupant. And the officers observed, in plain view, a tan tactical belt with an attached pistol holster on a chair in the living room and pictures on the wall in the living room that included Jamison. Following the arrest, this additional information (connecting Jamison to the residence) would have enabled the officers to obtain a search

15

warrant and the firearms and cell phones would inevitably have been discovered. (ECF No. 40, PageID.205–206.)

The Government's argument has support. An "arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). The Sixth Circuit has held that "an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating the totality of the circumstances, establish reasonable belief that the subject of the arrest warrant is within the residence at that time." *United States v. Pruitt*, 458 F.3d 477, 483 (6th Cir. 2006). The officers had that belief here given the information they received from Jamison's probation officer and seeing Jamison's car in the driveway.

And while the next steps do seem to logically follow, they need not be taken. While the officers could have simply executed the arrest warrant and subsequently prepared an even stronger search warrant affidavit, the path they took instead was just as lawful.

**VI.**

For all of these reasons, Jamison's motion to suppress is DENIED.

IT IS SO ORDERED.

Dated: January 5, 2021

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE