UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,

                        Case No. 19-cr-20798
                        Hon. LAURIE J. MICHELSON

vs.

RAJON JAMISON,

              Defendant.

_____/

ANN NEE
U.S. Department of Justice
600 Church Street; Suite 210
Flint, MI 48502
810-766-5032
Email: ann.nee@usdoj.gov

TIM M. TURKELSON
600 Church Street, Suite 210
Flint MI 48433
(810) 766-5177
Timothy.Tuirkelson@usdoj.gov

SANFORD A. SCHULMAN
Attorney for Defendant
      RAJON JAMISON
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
Email: saschulman@comcast.net

_____/

**DEFENDANT,  RAJON JAMISON's
SENTENCING MEMORANDUM**

NOW COMES the Defendant, RAJON JAMISON, by and through his attorney, SANFORD A. SCHULMAN and states in support of his Sentencing Memorandum as follows

## PROCEDURAL BACKGROUND

On October 29, 2019, Rajon Jamison was arrested and later charged with Possession of Firearms and Ammunition by a Prohibited Person in violation of 18 USC Sec. 922(g)(1) and 18 USC Sec. 924(e)(1).  At the time of his arrest, Rajon had been on supervised release for a little over a year.

On March 17, 2022, Rajon pled guilty as charged to the Superseding Indictment without a Rule 11 Plea Agreement.

1.    The Nature and Circumstances of the Offense and the History and Characteristics of the Offender

(a) Nature and Circumstances of Offense

The case focuses on a search of the home Rajon shared with his family on October 29, 2019.  It is important to note that Rajon was not charged with any criminal charges except for the offenses charged herein.  The previous month there was apparently some information provided to Rajon's probation officer.  However, Rajon was never charged with any type of assault or any other offense.

When law enforcement arrived at the those, Rajon was cooperative and there is no indication he obstructed the investigation. The firearms that were recovered were not used in any other criminal activity.  There were no drugs or any other illegal activity suspected in the home.  The firearms were registered in Rajon's mother's name. Rajon's mother was a Flint City Police Officer.

Rajon's phone was seized as part of the investigation and the Government has maintained that there are photographs of these and additional firearms in the phone.  In reality, the photos depict prop firearms that Rajon used in his job as a male dancer/entertainer.

The presentence report does not add any offense level points because the firearms were stolen because they were not stolen.  Or for firearms that were used in any other offense, because the firearms were otherwise legal and registered and secured under a couch cushion.  The firearms were in the house for no other reason but protection.  Rajon was concerned about the safety of his family and has since acknowledged that the presence of the firearms was a poor decision.

The defense has filed a number of objections to the presentence report including the following

1. PARAGRAPH 18: Objection to the 26-point base level. The defendant maintains that the correct base level should be 24. On March 17, 2022, the defendant pled guilty to the First Superseding Indictment without a Rule 11 Plea Agreement. The factual basis involved a statement by the defendant that on or about October 19, 2019, in the Eastern District of Michigan (Flint), he was residing in a home with other individuals and he knowingly possessed a Ruger, Model P90 .45 caliber handgun as well as a 9mm caliber semiautomatic handgun and a .40 caliber semiautomatic rifle as well as ammunition.

§ 2K2.1. Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition (a) (2) 24, if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense;

Specific Offense Characteristics

2. Paragraph 23: Chapter Four enhancement: and Paragraph 34 qualification as an armed career criminal.

The Supreme Court directs lower courts to use the categorical approach to determine whether prior convictions "ha[ve] as an element the use, attempted use or threatened use of physical force against the person of another." Descamps v. United States, 570 U.S. 254, 260-61, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013) (citing Taylor v. United States, 495 U.S. 575, 600, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990)).

Although the categorical approach originated under the Armed Career Criminal Act, it also applies to the Sentencing Guidelines. See United States v. Ford, 560 F.3d 420, 421-22 (6th Cir. 2009). Under the categorical approach, courts do not look at the particular facts of a prior conviction. Instead, they examine only the statutory elements of previous offenses. Descamps, 570 U.S. at 261; Taylor, 495 U.S. at 600.

Under the categorical approach, courts determine whether every defendant convicted of the particular offense must have used, attempted to use, or threated to use physical force against the person of another to have been convicted of that offense. Burris, 912 F.3d at 392.

Courts do not examine whether the defendant actually used, attempted to use, or threatened to use physical force against the person of another in the particular case giving rise to the prior conviction. Id. The Supreme Court decided Borden v. United States, 141 S. Ct. 1817, 210 L. Ed. 2d 63 (2021), under the Armed Career Criminal Act. There, writing for a four-Justice plurality, Justice Kagan identified four states of mind that give rise to criminal liability, in descending order of culpability: purpose, knowledge, recklessness, and negligence. Id. at 1823. The plurality held that the definition of a violent felony requires purpose or knowledge, not recklessness or negligence. Id. at 1825.

For this conclusion, the plurality located the mens rea requirement in the language of the force clause in the Armed Career Criminal Act, which requires force "against the person of another." Id. at 1833. This language "introduces that action's conscious object." Id.

Therefore, it excludes reckless conduct and actions not directed at another. Id.

In so concluding, the plurality abrogated the Sixth Circuit's decision in United States v. Verwiebe, 874 F. 3d 258 (6th Cir. 2017), which held that reckless offenses qualified as violent felonies. See Borden, 114 S. Ct. at 1823. Relying on Verwiebe, the Sixth Circuit upheld Borden's sentence as a career offender, id., and the Supreme Court reversed, id. at 1834. "Offenses with a mens rea of recklessness do not qualify as violent felonies under ACCA." Id.

The defendant maintains that his prior convictions including his conviction for conspiracy to commit armed robbery do not qualify him as an armed career offender.

3. Paragraph 24: Acceptance of Responsibility

The presentence report recommends no reduction for acceptance of responsibility. The defendant did not, upon the advice of counsel, address the facts of the case during his presentence interview. He has no requirement to do so. However, he did make out a detailed factual basis at the time of his plea which the court, the prosecutor and defense counsel were satisfied all the elements of the offense charged.

§ 3E1.1. Acceptance of Responsibility

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:

(A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct

beyond the offense of conviction in order to obtain a reduction under subsection

(a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous;

Although district court may not punish defendant for failing to participate in fact-gathering at presentence interview or for not pleading guilty, defendant must carry burden of demonstrating acceptance of responsibility. United States v. Nielsen, 371 F.3d 574, 2004 U.S. App. LEXIS 11322 (9th Cir. 2004).

The defendant in the case at bar has fully and factually accepted responsibility.  Rajon explained to the court at the time of the plea that he had never had a full and fair opportunity to see the exhibits, the evidence and review the jury instructions prior to trial.  At

the time of the plea, Rajon made a complete factual basis without any issue.

4. Paragraph 30.

The defendant objects to the paragraph that suggests "[i]n June, 2019, he erroneously texted his supervising probation officer and attempted to sell him marijuana." No text messages exist. The paragraph fails to noted that he was never violated while on Supervised release, completed all other terms and conditions including no tether violations, maintained employment, no tickets or violation while in the Bureau of Prisons, completed programs including anger management, etc.

Rajon was not charged with any new offense while on supervised release, never tested positive for any illegal substances and reported as directed.

5. Paragraph 44:

The defendant takes issue with the suggestion that his wife, Jasmin Major, will not agree to allow him to be placed in her residence after any custodial sentence is imposed.  She indicated to Rajon that she would have no issue serving as a third-party custodian at any time.

6. Paragraph 77:

The defendant asserts that he never physically assaulted his girlfriend. He was never convicted or even charged and this is based on a police report to probation which is completely based on hearsay.

(b) Characteristics of the Offender

Rajon's life has been filled with challenges starting as a juvenile.  At the age of 13, Rajon pled guilty to second degree murder and served his formidable years in custody.  He has been in and out of prison for most of his life.  Ironically, he was actually doing very well at the time of his arrest in October, 2019.  He had been on supervised release without violation and his relationships with his mother and daughter were improving.

It should also be noted that Rajon received no major infractions while in the Bureau of Prisons, completed a number of programs while in prison and as released without losing any good time credits. After his release from prison in 2018, Rajon was successful while at the half-way house, never violated his tether, maintained employment and has been an integral part of his daughter's life.

Many have already given up on Rajon. But Rajon is 41 years old and still believes he can contribute. At one point in his life when everyone had abandoned him, he demonstrated that he could succeed given the opportunity. Indeed, he earned his GED, attended Community College where he earned a 4.0 g.p.a. for the short time he was there.

Rajon has expressed his desire to return to the community and to demonstrate to his family and the community that he can apply the same desire and aptitude for success. He is not ready to be discarded.

Moreover, Rajon never otherwise violated his supervised release. He reported as directed, never tested positive and when he was required to appear he did.

2. The Need for the Sentence Imposed To Promote Certain Statutory Objectives:

(A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; (D) to provide the defendant

with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

The starting point of this analysis should always be the sentence prescribed by the United States Sentencing Commission Guidelines ("U.S.S.G." or "the Guidelines"). Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 596, 169 L. Ed. 2d 445 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range") (citing Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 2480, 168 L. Ed. 2d 203 (2007)). However, the court may not limit its analysis to the Guidelines; indeed, it "may not presume that the Guidelines range is reasonable." Gall, 128 S. Ct. at 596. Rather, before rendering its decision, the court must consider all the factors enumerated in 18 U.S.C. § 3553(a) to determine if they warrant adjusting the sentence. United States v. Booker, 543 U.S. 220, 245-46, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). In doing so, the court must consider any argument made by the defendant to reduce his or her sentence: When a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it. After

considering such arguments, the district judge cannot simply rely upon the advisory Guidelines range, but rather "must make an individualized assessment based on the facts presented." Finally, the district judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." United States v. Lalonde, 509 F.3d 750, 770 (6th Cir. 2007) (quoting Gall, 128 S. Ct. at 597) (other quotations omitted).

A sentence rendered by a district court must be both procedurally and substantively reasonable. Gall, 128 S. Ct. at 597. The court commits procedural error if it ignores or incorrectly calculates the Guidelines range, treats the Guidelines as mandatory, disregards the relevant § 3553(a) factors, relies on clearly erroneous facts, or fails to adequately explain its reasons for choosing a particular sentence or deviating from the Guidelines range. Id.; see also United States v. Dexta, 470 F.3d 612, 614-15 (6th Cir. 2006) ("[A] sentence is procedurally reasonable if the . . . court addressed the relevant factors in reaching its conclusion. . . . [P]rocedural reasonableness . . . does not depend on a district court's engaging in a rote listing or some other ritualistic incantation of the relevant § 3553(a) factors") (internal citations omitted). By contrast, "[a]

sentence is substantively unreasonable if the district court 'selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor.'" United States v. Husein, 478 F.3d 318, 332 (6th Cir. 2007) (quoting United States v. Caver, 470 F.3d 220, 248 (6th Cir. 2006)).

If this court makes a finding over the defendant's objection that Rajon qualifies as an armed career offender, this court will have no discretion but to sentence Rajon to a minimum term of 15 years. That is a significant custodial sentence.  The guidelines as calculated which provide no benefit for the plea and acceptance of responsibility add an additional 55 months.  The nearly 5-year addition to the already draconian 15 years is excessive.  If this court deems it appropriate to sentence Rajon as an armed career offender, 15 years is more than sufficient.

Since his arrest and during the pendency of this case, RAJON JAMISON has maintained avoided criminal contact while in the county jail.  He has been in custody in the county jail for almost 3 years.  He has had little or no access to any federal programs.

The issue of course is what is a sufficient sentence. If Rajon did not have the criminal history, he may have actually been eligible for a non-custodial sentence. Rajon has paid a heavy price for his years of prison. Ironically, he is facing one of his harshest sentences for an offense that did not involve any assault or drugs.

## CONCLUSION AND SENTENCING RECOMMENDATION

The defendant, RAJON JAMISON, maintains that he should not be sentenced as an armed career offender and that he should receive the appropriate point reduction for acceptance of responsibility. A sentence of 60 months would otherwise be sufficient but not greater than necessary. If this court finds that Rajon is an armed career offender, a sentence of 15 years is more than sufficient to satisfy all the 3553(a) factors.

Respectfully submitted,


s/Sanford A. Schulman
SANFORD A. SCHULMAN
Attorney for Defendant:
RAJON JAMISON
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
saschulman@comcast.net

Date: September 9, 2022